WILLIAM STONAKER and GERTRUDE STONAKER, complainants-respondents,

*v.*

ESTHER COHEN and SOL KANTOR, defendant-appellant.

[Argued October 23d, 1928. Decided February 4th, 1929.]

*Mr. Joseph F. Deegan,* for the complainants-respondents.

*Mr. Sol Kantor, per se,* for the defendant-appellant.

The opinion of the court was delivered by

WHITE, J.

The defendant Kantor (who only appeals), a member of the bar of New Jersey, advertised first or second mortgage money for loan. Stonaker, in answer to the advertisement, applied for a second mortgage loan of $3,000, which Kantor, in behalf of his client, Cohen, agreed to make on the terms, as Stonaker says, of charging a bonus of $400, but as Kantor says, of a charge by him of $100 for his services. Stonaker agreed to these terms, whatever they were, and left his title papers, &c., with Kantor, who prepared, and on October 20th, 1927, had Stonaker and wife execute a $3,000 bond and mortgage to Cohen for the proposed loan, which executed papers were left with Kantor awaiting settlement

as soon as title searches should have been completed. When this time arrived Kantor refused to settle, except, as Stoneaker says, on the basis of Cohen advancing only $1,700 at that time and $900 the following spring; or, as Kantor says, of advancing $1,900 then and the remainder of the loan when the building should have been fully completed, which he claimed it was not at that time, although this, Stonaker denied. This proposal, whatever it was, Stonaker refused to accept and the entire transaction fell through. Stonaker then arranged to borrow his money elsewhere, and on January 5th, 1928, called at Kantor's office, advised him of this fact, and demanded the return of the title papers and of the executed bond and mortgage, which demand Kantor refused to comply with unless Stonaker would pay him $100 for his services, which Stonaker in turn refused to do because the mortgage money had not in fact been procured.

Kantor then, with full knowledge that the proposed loan had fallen through and would not be made, four days afterward, on January 9th, recorded the mortgage which Stonaker had executed and left with him as above noted. This action, of course, was utterly without justification and is most reprehensible.

Stonaker then filed this bill in the court of chancery against both Cohen and Kantor, praying a return of Stonaker's title papers and a cancellation of record of the mortgage so as aforesaid improperly recorded. The answer filed by the defendants is based upon the idea that Kantor's action in knowingly placing the mortgage of record after the proposed loan for which it was intended to be given had fallen through, and because of which action this bill became necessary, could, in some way, be justified; which, of course, it could not. The learned vice-chancellor thereupon very properly struck out the answer upon hearing pursuant to notice, after receiving the affidavits of and hearing both sides, and made an order directing the cancellation of the mortgage of record, and for the return of the title papers, and for the payment by the defendants of the complainants' costs and of $150 counsel fee. A decree was then drawn and signed, intended

to be in pursuance of this order, but through inadvertence the direction for the payment of costs and counsel fee was limited to the defendant Cohen, as was, of course, the direction to satisfy the mortgage of record, that being in her name. The defendant Cohen complied with this decree, canceled the mortgage of record, returned it to the complainant, and paid one-half of the costs and of the $150 counsel fee, and the defendant Kantor complied with the portion of the decree which required him to deliver up the title papers to the complainant. Application was then, upon notice, made to amend the formal decree, so that it should conform with the order and make the defendant Kantor responsible with his co-defendant for the costs and counsel fee, and this application (as it recites upon hearing in the presence of both sides) was granted. Kantor alone appeals and while he raises a large number of points we think they are all entirely without merit. The one that he principally relies upon is to the effect that, contrary to the recital of the order amending the decree, and contrary to the statement of counsel on the other side, he, himself, says that although he attended court in pursuance of the notice of application to amend the decree, he was not in fact heard, and, therefore, did not have his day in court. We cannot agree with this contention. Appellant seems to lose sight of the fact that he was one of the defendants and was regularly and properly brought into court as such, and was there heard in his defense on the application to strike out his answer; that such answer was stricken out as not setting up any sufficient defense, and that as a part of that decision it was ordered that the counsel fee therein allowed should be taxed with the other costs against both defendants. To say that appellant did not have his day in court upon this point in the face of this circumstance seems frivolous. If, in fact, the vice-chancellor did not listen to what, if anything, appellant had to say when the decree was, on notice to him, amended so as to correspond with the language of the order entered in the cause, nevertheless, obviously the correction by the vice-chancellor of such an in-

advertence as this, in the way it here occurred, did not work any injury to the appellant.

As before stated, the other points are also entirely without merit and the decree appealed from is affirmed, with costs.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, KALISCH, KATZENBACH, LLOYD, WHITE, VAN BUSKIRK, HETFIELD, DEAR, JJ. 10.

*For reversal*—None.